Eliot M. Harris, OSB No. 116968
SEDGWICK LLP
520 Pike Street, Suite 2200
Seattle, WA  98101-4093
Telephone:  206.462.7560
Facsimile:  206.462.7561
eliot.harris@sedgwicklaw.com

Attorneys for Plaintiff TRAVELERS PROPERTY
CASUALTY COMPANY OF AMERICA

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,<br><br>        Plaintiff,<br><br>v.<br><br>PEAK WEB, LLC, a California limited liability company,<br><br>        Defendant. | Case No. _____<br><br>COMPLAINT FOR DECLARATORY JUDGMENT<br><br>JURY TRIAL REQUESTED |

Plaintiff Travelers Property Casualty Company of America ("Travelers") alleges as follows:

**PARTIES**

1. Travelers is an insurance company incorporated in the State of Connecticut, with its principal place of business in Hartford, Connecticut.

2. Peak Web, LLC ("Peak Web") is a California limited liability company, with its principal place of business in Tualatin, Oregon. According to public records, Jeffrey Papen is the sole member of Peak Web, and is a resident of Oregon.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), 2201, and 2202 as this suit prays for declaratory judgment, is between citizens of different states, and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that Peak Web resides in Oregon, and a substantial part of the events giving rise to this claim occurred in Oregon, as this case seeks a declaratory judgment concerning an insurance contract that was delivered to Peak Web in Oregon and is to be interpreted under Oregon law.

## GENERAL ALLEGATIONS

**A.    Peak Web's Business and the Network Outages**

5. Peak Web asserts that it specializes in the design, build, and management of complex network architectures that support some of the largest online businesses, including mobile gaming applications. Peak Web further asserts that it provided network hosting through its proprietary architecture to Machine Zone, Inc. ("Machine Zone").

6. Peak Web asserts that a network outage occurred on October 27, 2015, which affected Peak Web's ability to provide technology services to its clients and damaged Peak Web's relationship with Machine Zone, causing Peak Web financial loss. Peak Web asserts that additional network outages occurred on November 1, 3, 4, and 22, 2015. The outages on October 27, 2015, and November 1, 3, 4, and 22, 2015 are referred to herein collectively as the

"Outages." Peak Web asserts that the Outages were caused by a bug in software manufactured by a third party.

**B.     Peak Web's Third-Party Claim to Travelers Following the Outages**

7.     Machine Zone filed a lawsuit against Peak Web in the Superior Court of the State of California, County of Santa Clara, Case No. 115CV288498, following the Outages (the "*Machine Zone* action"). Peak Web tendered its defense of the *Machine Zone* action to Travelers under policy no. ZPL-71M34306-15-13 issued by Travelers to Peak Web for the policy period beginning June 19, 2015 (the "Policy"). Travelers has agreed to provide a defense, and is providing a defense, to Peak Web under a reservation of rights in the *Machine Zone* action. The *Machine Zone* action is not the subject of this lawsuit, and Travelers does not, by this complaint, seek a judgment declaring Travelers' and Peak Web's rights and obligations with respect to the *Machine Zone* action.

**C.     Peak Web's First-Party Claim to Travelers Following the Outages**

8.     Peak Web claims to have incurred financial loss caused by the Outages, and it presented a first-party insurance claim to Travelers as a result of the claimed loss. Peak Web claimed that portions of its claimed loss were covered under the "Business Interruption And Additional Expenses Coverage," the "Computer Program and Electronic Data Restoration Expenses Coverage," and the "Crisis Management Services Expense Coverage" in the CyberFirst Expense Reimbursement Coverage Form of the Policy. The amount claimed by Peak Web is greater than the jurisdictional minimum of this Court.

9.     Travelers determined that some of Peak Web's claimed first-party loss was not covered under the Policy's CyberFirst Expense Reimbursement Coverage Form.

10. A dispute exists between Travelers and Peak Web regarding Travelers' and Peak Web's rights and obligations under the Policy with respect to Peak Web's insurance claim under the CyberFirst Expense Reimbursement Coverage Form. By this complaint, Travelers seeks a judgment declaring Travelers' and Peak Web's rights and obligations with respect to Peak Web's first party insurance claim made under the Policy's CyberFirst Expense Reimbursement Coverage Form.

**D.** **The Travelers Insurance Policy**

11. Travelers issued the Policy to Peak Web pursuant to all of the terms, conditions, limitations, exclusions, and endorsements contained therein. The coverage provided by the Policy includes CyberFirst Expense Reimbursement Coverage.

12. The CyberFirst Expense Reimbursement Coverage Form in the Policy provides in part:

> **SECTION I – CYBER FIRST–PARTY COVERAGES**
>
> **1.** **Insuring Agreements**
>
> \* \* \*
>
> **b.** **Crisis Management Service Expenses Coverage**
>
> **(1)** If Crisis Management Service Expenses Coverage is shown in the CyberFirst Declarations, we will reimburse you for loss to which this insurance applies that is "YOUR CRISIS MANAGEMENT SERVICE EXPENSES". The amount we will pay for "your crisis management service expenses" is limited as described in Section III – Limits Of Insurance in your CyberFirst General Provisions Form.
>
> **(2)** This insurance applies to "your crisis management service expenses" only if such expenses are:
>
> **(a)** Directly attributable to a "wrongful act" committed on or after the applicable

        "retroactive date" and before the end of the policy period;

    **(b)** First incurred by you during the policy period; and

    **(c)** Reported to us during the policy period or within 90 days after the end of the policy period.

  **(3)** Each "wrongful act" in a series of "related wrongful acts" will be deemed to have been committed on the date the first "wrongful act" in that series is committed.

  **(4)** Any of "your crisis management service expenses" that are:

    **(a)** First incurred by you after the end of the policy period; and

    **(b)** "Related" to any of "your crisis management service expenses" which are first incurred by our during the policy period;

  Will be deemed to have been incurred by our during the policy period.

 **c.** **Business Interruption and Additional Expenses Coverage**

  **(1)** If Business Interruption and Additional Expenses Coverage is shown in the CyberFirst Declarations, we will reimburse you for loss to which this insurance applies that is "your business interruption expenses" is limited as described in Section III – Limits of Insurance in your CyberFirst General Provisions Form.

  **(2)** This insurance applies to "your business interruption expenses" only if such expenses are directly attributable to a "computer system disruption" that:

    **(a)** Occurs during the policy period; and

  **(b)** Any "described authorized person" knew about during the policy period or within 90 days after the end of the policy period.

 **(3)** Each "computer system disruption" in a series of "related" "computer system disruptions" will be deemed to have occurred on the date the first such disruption in that series occurs.

 **(4)** A "described authorized person" will be deemed to know about a "computer system disruption" when such person first becomes aware of facts that would cause a reasonable person to assume that "your business interruption expenses" have been or will be incurred, regardless of when such "computer system disruption" occurred, even though the exact amount or details of such expenses may not then be known.

* * *

**e.** **Computer Program and Electronic Data Restoration Expenses Coverage**

 **(1)** If Computer Program and Electronic Data Restoration Expenses Coverage is shown in the CyberFirst Declarations, we will reimburse you for loss to which this insurance applies that is "your restoration expenses". The amount we will pay for "your restoration expenses" is limited as described in Section III – Limits of Insurance in your CyberFirst General Provisions Form.

 **(2)** This insurance applies to "your restoration expenses" only if such expenses are directly attributable to a "computer violation" that:

  **(a)** Occurs before the end of the policy period; and

  **(b)** Any "described authorized person" knew about during the policy period or within 90 days after the end of the policy period.

 **(3)** Each "computer violation" in a series of "related" "computer violations" will be deemed to occur on the date the first "computer violation" in that series occurs.

      **(4)**    A "described authorized person" will be deemed to know about a "computer violation" when such person first becomes aware of facts that would cause a reasonable person to assume that "your restoration expenses" have been or will be incurred, regardless of when such "computer violation" occurred, even though the exact amount or details of such expenses may not then be known.

* * *

## SECTION II – DEFINITIONS

* * *

**4.**    "Business income loss" means:

    **a.**    Net profit before income taxes that you would have earned; or

    **b.**    Net loss before income taxes that you would not have incurred or would have avoided.

if there had been no "computer system disruption, but only with respect to your business operations that are dependent on "your computer or communications network".

**5.**    "Business interruption period of restoration" means the period of time that:

    **a.**    Begins with the date and time that "your computer or communications network" has been first interrupted by a "computer system disruption" and after application of the "waiting period"; and

    **b.**    Ends with the earlier of:

        **(1)**    The date and time "your computer or communications network" is restored to substantially the level of operation that had existed prior to the "computer system disruption"; or

        **(2)**    Thirty days from the date and time that "your computer or communications network" was first interrupted by such "computer system disruption".

* * *

**7.** "Computer system disruption" means the actual and measurable interruption, suspension or failure of "your computer or communications network" directly attributable to:

    **a.** A "computer violation"; or

    **b.** An intentional attack on "your computer or communications network" with protocols or instructions transmitted over the internet or another computer or communications network, which triggers the use of "your computer or communications network's" resources to the extent that the capacity of those resources to accommodate "authorized users" of "your computer or communications network" is depleted or diminished;

provided that you are the specific target of such "computer violation" or intentional attack.

**8.** "Computer violation" means:

    **a.** The introduction of a "computer virus" into "your computer or communications network"; or

    **b.** Damage to, or destruction of, computer programs, software or other electronic data stored within "your computer or communications network" by a person who:

        **(1)** is not authorized to access "your computer or communications network"; or

        **(2)** is authorized to access "your computer or communications network" but uses such access to cause such damage or destruction.

**9.** "Described insured" means any person who qualifies as an insured under Section II – Who Is An Insured in your CyberFirst General Provisions Form, other than:

    **a.** Any "independent contractor'; or

    **b.** Any person that qualifies as an insured under Paragraph 5. of Section II – Who Is An Insured in your CyberFirst General Provisions Form.

**10.** "Extra expense" means necessary expenses incurred by you, with our prior written consent, and directly attributable to a "computer system disruption", but only to the extent such expenses exceed your normal operating expenses, reduce "business income loss"

and would not have been incurred if there had been no "computer system disruption".

\* \* \*

20. "Waiting period" means the number of consecutive hours shown in the CyberFirst Declarations that must elapse after the actual and measurable interruption or suspension of your business directly attributable to a "computer system disruption".

21. "Your business interruption expenses":

    a. Means the sum of "business income loss" and "extra expense" sustained during the "business interruption period of restoration".

    b. Does not include:

        (1) Contractual penalties of any nature.

        (2) Costs or expenses incurred to update, restore, replace or otherwise improve "your computer or communications network" to a level of functionality beyond that which existed before the "computer system disruption".

        (3) Costs or expenses incurred to identify or remediate computer system errors or vulnerabilities.

        (4) Any other consequential loss or damage.

        (5) Legal cost or legal expense of any nature.

        (6) Loss arising out of liability to any person or organization that is not an insured.

        (7) Bank interest or investment income.

        (8) Fees, costs or expenses to remove software program errors or vulnerabilities.

\* \* \*

23. "Your computer or communications network" means any computer or communications network that you rent, lease, license, or borrow from others, own or operate.

24. "Your crisis management service expenses":

    **a.**    Means the reasonable fees, costs, or expenses incurred and paid by you in:

        **(1)**    Retaining a public relations consultant or firm, or a crisis management consultant or firm; or

        **(2)**    Planning or executing your public relations campaign; to mitigate any actual or potential negative publicity generated from loss to which the insurance provided under any of the liability coverages in "your CyberFirst coverage forms" applies.

    **b.**    Does not include fees, costs or expenses you incur to comply with any law or regulation.

        \* \* \*

**27.**    "Your restoration expenses":

    **a.**    Means:

        **(1)**    Reasonable costs incurred by you, with our prior written consent, to restore, replace or reproduce damaged or destroyed computer programs, software or other electronic data stored within "your computer or communications network", to the condition that existed immediately preceding the "computer violation"; or

        **(2)**    Reasonable costs incurred by you, with our prior written consent, to determine that such computer programs, software or other electronic data cannot reasonably be restored, replaced or reproduced.

    **b.**    Does not include:

        **(1)**    Expenses incurred as a result of the reconstruction of computer programs, software or other electronic data which you did not have a license to use.

        **(2)**    Expenses incurred to restore, replace or reproduce damaged or destroyed computer programs, software or other electronic data if such damage or destruction was caused by computer programs, software or other electronic data which you did not have a license to use.

      **(3)**    Expenses incurred to design, update, improve or perfect the operation or performance of computer programs, software or other electronic data.

      **(4)**    Expenses incurred to redo the work product, research or analysis that was the basis of, or resulted in, any computer programs, software or other electronic data stored.

\* \* \*

13. The Policy's CyberFirst Network and Information Security Liability and Coverage Form contains the following definition:

**SECTION II – DEFINITIONS**

\* \* \*

**3.** "Computer virus" means malicious code that is introduced through your web-site or "your computer or communications network". Once introduced, such code may destroy, alter, contaminate or degrade the integrity, quality or performance of data of any computer application software, computer network, or computer operating system or related network.

\* \* \*

## CLAIM FOR RELIEF

### (Declaratory Judgment)

14. Travelers incorporates by reference the allegations contained in the paragraphs above.

15. An actual controversy has arisen and now exists between Travelers, on the one hand, and Peak Web, on the other hand, concerning their respective rights and duties under the Policy.

16. Peak Web contends that it incurred financial loss caused by the Outages, and that its claimed financial loss is covered under the CyberFirst Expense Reimbursement Coverage Form in the Policy.

17. Travelers contends that some or all of Peak Web's claimed financial loss is not covered under the CyberFirst Expense Reimbursement Coverage Form in the Policy.

18. Travelers desires a judicial determination of its rights and duties under the Policy, if any, with respect to Peak Web's claimed financial loss resulting from the Outages.

19. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without judicial adjudication. Accordingly, Travelers has no plain, speedy and adequate remedy at law, and requests a declaratory judgment, adjudging that some or all of Peak Web's claimed loss resulting from the Outages is not covered under the Policy, and that Travelers has no obligation to pay Peak Web for some or all of its claimed loss.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Travelers Property Casualty Company of America prays for judgment against Peak Web, LLC as follows:

1. For a judgment by the Court that, by reason of the terms, conditions, exclusions and limitations of the Policy, some or all of Peak Web's claimed loss resulting from the Outages is not covered under the Policy, and Travelers has no obligation to pay Peak Web for some or all of its claimed loss.

2. For costs incurred herein; and

3. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Travelers demands a trial by jury.

DATED this 25th day of January, 2016    SEDGWICK LLP


    *s/Eliot M. Harris*
    Eliot M. Harris, OSB No. 116968
    520 Pike Street, Suite 2200
    Seattle, WA  98101-4093
    Phone:  206.462.7560
    eliot.harris@sedgwicklaw.com
    Attorneys for Plaintiff TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA